Our next case is DuCharme v. Kilolo Kijakazi.  May it please the court, Dana Duncan on behalf of the appellant Chad DuCharme. We presented multiple issues before the court in briefing. Two of those issues went to the ability of the ALJ to make a finding of the limitations following his back surgery. The second issue was involving credibility. Unless the court has questions regarding those two issues, I'll focus on the more controversial and novel issue, and that is the issue of significant number of jobs in the national economy. Before I start, I would point out two issues that were raised as far as waiver of this issue. First, the waiver issue was never raised before the district court, so the issue of waiver was first raised on appeal in this case. Second, the issue is not a waiver per se because this is not a case where we're challenging the vocational testimony. We're challenging the ALJ's action, which makes it, instead of in the line of precedent from Donahue, places it more in line with Overman, which involved the ALJ's failure to act regarding specially charged duties. But what concerns me about this, I realize there are waivers and waivers and waivers and all the rest of that, but the kind of argument you're making seems like the kind of argument that belongs at the agency level. They're trying to figure out how to administer this statute, and if they want to have a multi-factor test for significance of number of jobs or if they want to have a certain balance between region and the national level or if they want to have presumptions that you have to have 50,000 jobs before you have enough. Whatever they may do strikes me as the kind of thing that needs to be handled first by the agency. You're correct, Your Honor, and that's what I'm asking because what we have in this case, as we have in almost every case, is we have a finding by the administrative law judge that was perfunctory, that's conclusory. He just finds there's a significant number of jobs. But how clearly was the administrative law judge challenged about that at the original hearing? There wasn't challenges, and I admit that. The problem comes in, though, is that he still has that duty, and at Step 5, it's his duty and burden of proof. And in this particular case, we have a situation where we had three different hypothetical questions. It's actually the commissioner's burden of proof. It's not the ALJ's. Correct. Ultimately, the ALJ's decision is upheld by the commissioner, thus becoming the commissioner's decision. But the burden of proof at Step 5 rests with the commissioner. They have the duty. And what I find interesting is that we have no question in this court that there has to be findings of fact made regarding whether there is work. Step 2, we can find severe impairments, but we look at the RFC, or the residual functional capacity, to determine whether there's sufficient evidence to support the limitations for non-severe impairments that were missed at Step 2. We have case law that says we have to have listings outlined in detail so that we can follow their path of reasoning. At Step 4, the vocational expert's testimony is used many times for the past relevant work. When we come to Step 5, we have vocational testimony and then a blanket statement that this is a significant number of jobs. Correct. It doesn't give a whole lot of enlightenment except, and this is where I point to the court's ruling in Browning, which is that the court there indicated that there's got to be some meaning to this and there's got to be something more that should be done in these cases. It says in one point- Why does there need to be something more? Substantial number of jobs in the national economy is the phrase in the statute. Correct. Right, so why can't the agency just administer the statute as it's written? Except that it also says things like, given the intricate, or excuse me, isolated jobs that exist only in a few, very few locations outside the region where you live is a factor that's to be considered, but nowhere in there is that addressed. Why is, why? What in the statute makes that something requiring consideration? It seems to me you could point to something in the statute or maybe something in a Social Security regulation or ruling, but I didn't see you make an argument based on either of those in your brief. Am I missing something? No, Your Honor. I did make them, but I'm not sure it was as clear as it should have been. Ultimately, that's the issue. And I will say that we have 30 years of jurisprudence, not only in this court, but all across the country. Appellants have challenged the number. This court is not competent to determine and should not be required to determine whether 36,000 jobs is sufficient and 35,999 is not. That's the responsibility of the administration, and they have to establish some basis as to why. Let's take us back to the problem when the vocational expert said, I think it was 31,000, wasn't it? Correct. Vocational expert says 31,000. There could be cross-examination along the grounds of why do you think that's a significant number of jobs, the magic phrase. I take it that there wasn't. If you would like, Your Honor, I can provide you with reference after our oral argument that the Vocational Employment Handbook precludes vocational experts from testifying as to what is or is not a significant number. It's one of those issues reserved for the ALJ, I assume. Correct. Here's my – or at least one of my concerns about this. You have these numbers of jobs, and they're not really there. This is one of the weird things about the Social Security system to me. They're not there to say that this individual, Mr. Ducharme, for instance, is going to get one of those jobs. They're kind of an example of what can an individual with his limitations do. And if there are jobs in the national economy or even the regional economies that a person with those limitations could perform, then it makes sense to say the person is not disabled. And by the same token, if there are just three jobs here and five jobs there, then maybe this person really is disabled enough that work is not a realistic option. But I think there's – I don't know. There's a slight tension in looking at the number of jobs and realizing what the point of that inquiry is. And I think that's the heart of this argument, which is that the administrative law judge should at least say something as far as his consideration of those very issues because the regulation specifically notes that he is to take into account isolated jobs. I have longitudinal history in the disability system. In the old days, the numbers were all on county business patterns, which is why in Lisowitz they use a nine-county region, and they came up with 6,000. Then they ended up starting to use the Bureau of Labor Statistics, and they started using state numbers, and then ultimately going to national numbers. And it's just muddled the situation beyond hope. And without – it's not – it is an extension of the whole question about the vocational expert, the testimony, the numbers provided. It's just not anything that's clear, and it should be clearer. And I'm not asking the court to act or to say it should do this or shouldn't do this, but there has to be something more than a conclusory statement. So you're essentially then asking for a remand because the 31,000 wasn't adequately explained as something complying with the statute. Correct. All right, and on that, I will reserve my last minute for rebuttal. Certainly, Mr. Duncan. Ms. Siegel. Yes, good morning, Your Honors. My name is Catherine Siegel. I represent the Commissioner of Social Security in this case. Substantial evidence supports the Commissioner's decision, and the court should affirm the decision. I will focus also on the vocational expert issue since the claimant's attorney has indicated that's the most important one to talk about an argument. Here we have 31,000 jobs nationally identified by the vocational expert, and that number is comfortably within the significant number of jobs that the court has affirmed in other cases. In particular, the Mitchell case recently in July of 2021, this court found that, or rather, 30,000 jobs nationally was affirmed as a significant number of jobs. So is this just seat of the pants? I mean, what makes this significant and some other number, 15,000 maybe, not significant? Well, in other cases that this court has decided, the court has found that tens of thousands of jobs are considered significant. The Weatherby case and the Prim case both found 100,000 were in the threshold. I've seen those cases, and I'm just wondering if it's up to each panel of three appellate judges or each district court judge if it doesn't come to the court of appeals level. It's an important part of the entire process that leads to a finding of disability or not, because a great many cases that we see go to Step 5. The person has a problem with prior work, but it turns out these jobs are always mentioned, order clerk, document preparer, inspector. I've seen that so many times I can't begin to say, but you would think there should be some legal predictability to what this is, and also some careful attention to regional versus national, since the statute does contemplate a difference. Yes, and this court has recognized that either of those are appropriate for an ALJ to rely on when making that determination. It is a factual determination. ALJ, in this case, sought vocational expert testimony to obtain that information about what would accommodate the claimant's functional capacity, which was very restricted to a reduced range of sedentary work with a sit-stand option. So there were many restrictions that the ALJ put forth before the vocational expert. Let me ask Judge Wood's question in a different way. The grids are quite elaborate. There are all sorts of pointers saying, if this by age 50, then not disabled, but on age 51 you are disabled. It's quite an elaborate thing. Is there anything equivalent for figuring out whether a given number of jobs is substantial? Well, the grids are for exertion. I know what the grids are for. I'm asking if there's anything equivalent for the substantiality of jobs. It might say, well, look, if the job you can do is as an airplane pilot, then 500 jobs is enough. If the job you can do is of any kind, then you really are looking for so-and-so as substantial. Any effort to do that kind of thing? That's where the vocational experts come in and are very valuable. You're not getting my question. I'm not asking what vocational experts testify. Mostly they seem to say random things. I'm asking whether the commissioner has issued regulations specifying the meaning of particular statutory terms as applied to different kinds of jobs. If the answer is no, that's fine, but don't try to change the question. Right. The regulations talk about the ALJ having to find significant numbers. That's a factual finding they made based on they can either use the grids or they can use vocational expert testimony. I am not aware of any grid-like regulation that would guide anything beyond that really. I mean, the vocational experts are there because these are very specific limits that don't fit into a grid. I'm not asking about the grid. I'm asking about a comparison to the grid. I don't think you're getting my question. Why don't you just proceed? Well, I will say the regional difference matters. I could imagine that there might be a certain number of jobs for orange grove tender down in Florida and probably zero such jobs up here in Illinois because we don't have very many orange groves that would survive very long. So there could be a substantial number. Well, wait a few years, right? There could be a substantial number of certain kinds of jobs in certain regions, but what it means to be substantial, in other words, is this a meaningful test of disability, doesn't seem to have caught the commissioner's attention. I'm taking your difficulty in giving an answer to Judge Easterbrook as a no. There are, in fact, no regulations that clarify what substantiality means, what the point of it is, how you can resolve doubts on marginal cases. There are regulations on the types of things that are not supposed to be considered in making a decision about whether there are jobs available that would fulfill the Step 5 finding. The kinds of isolated regional jobs that you mentioned, like an orange picker. Well, that might be a huge job in Florida. I mean, there may be a lot of them. Right, but that also might give an advantage to a claimant who does not live in Florida because those jobs are not available to that claimant. Well, they are available. The person has to move. Right. I assume that's why the statute says national economy. Right. Because if you can move to a job, that's what you have to do. Right, and here we do have national numbers, and the court has provided guidance in other cases as to what significance the 31,000 jobs would have. We have guidance in other cases that, say, 30,000 is a job number that can be affirmed as significant. And so that is what I would ask the court to do here. That is comfortably within the tens of thousands of jobs that courts have recognized as significant. And the claimant's attorney is trying to create new policy, essentially, by enlisting all kinds of factors that the agency does not adopt or recognize as something that should be part of the Step 5 finding. But are you arguing, though, that the agency is entitled to be completely arbitrary in its determination? Because that's troublesome. I think that's really far-stretched how the agency operates. We don't defend incredibly low numbers nationally. This is a case that has 31,000 jobs. That is not a very, very low number nationally. Would we have a pattern of cases that would say this number is too low? We do have a pattern of cases that say what is significant, and we can follow those cases. But I don't see the bracket at the other end of it. A million jobs, we'd all agree, perfectly significant. It's not a hard case. Is it 100? Is it 200? Is it the airline pilot example? That's what I didn't see. The other end of the brackets is what I didn't see in the brief. Right, and there are jurisdictions that do go much lower than the Seventh Circuit numbers that I cited. But that's just an accident of the cases that came before. It's an accident of the cases, and it suggests the agency isn't taking its job seriously. The fact that an accidental case goes to the Sixth Circuit with 25,000 people or to the Eighth Circuit with 15,000 does not, it seems to me, tell the agency that it needn't even try to figure out what is a substantial number of jobs. Oh, quite the contrary, Your Honor, because the agency employs vocational experts in nearly every case to identify— You must have read our cases. Our view of vocational experts is that they give essentially random testimony based on things that they don't know very much about, in part because the Department of Labor hasn't managed to upgrade the Dictionary of Occupational Titles in how many decades? 1992, I think. Yeah. And so the vocational experts have to make things up. We've even had the Supreme Court decide whether they have to reveal how they have made them up. Answer, no, not unless you're challenged. It doesn't give a great deal of confidence in vocational experts. In defense of vocational experts, these are people who are working actively as rehabilitation counselors, placing people in actual jobs every single day. And they testify before the agency because they have that experience in actually placing people in jobs. And they do use a lot of statistical analysis as part of their testimony, but they also draw on their own experience. And to call that into question because job data is difficult to— When an expert gets on the stand in a federal court and says, the basis of my testimony is my experience, period, stop, that person will be prevented from testifying on the ground that he or she is a quack. Now, the world is different in the agency, and we understand that. But singing the praises of somebody who just says, my experience, without providing a basis, is, well, not something you will find judges doing very often. Well, and that's why the claimant's attorney is given an opportunity at the hearing. Exactly, and we know that didn't happen here. So there are problems of forfeiture in this case. But saying the agency doesn't even have to try to tell us what a substantial number is because that's the job of the vocational expert. And, oh, by the way, the vocational expert is forbidden from testifying whether it is a substantial number kind of leaves us dry. I think we have your position, counsel. Thank you, Your Honor, and I ask the court to affirm the commissioner's decision. Anything further, Mr. Duncan? Just I will try to answer your question, Judge Easterbrook. There is nothing. There's nothing about it at all that says anything as far as what the numbers are. I didn't think there was. No, and, in fact, even the grids do not apply mechanically. The rules are prophylactic in nature, and they will vary. So 50 does not mean 50. It could mean 49 and 8 months because otherwise it's arbitrary. That's the standard of the commission. They are arbitrary, and the Supreme Court sustained them on the ground that arbitrary is good in a big system. Correct, and I would point out again, you know, in Browning, the whole issue in that case was the fact that Browning had very low IQ and had to rely on her parents to manage her daily activities. So the concept of her moving to Florida, as Judge Posner wrote, to become a cigar roller is one of the jobs cited did not make much sense from her rural location in Indiana. So on that, if there are no other questions. Thank you, Mr. Duncan. Thank you. The case is taken under advisement.